(C. D. 778)

EUROPEAN LINEN IMPORTING CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 11, 1943)

*John R. Rafter* (*Otto Fix* of counsel) for the petitioner.
*Paul P. Rao*, Assistant Attorney General (*Frank E. Carstarphen*, special attorney), for the respondent.

Before OLIVER, WALKER, and COLE, Judges; COLE, J., dissenting

WALKER, Judge: This is a petition filed under the provisions of section 489 of the Tariff Act of 1930 for the remission of additional

duties assessed by virtue of that section by reason of undervaluation on entry of certain Sagara mats imported from Japan during the period from March 28, 1940, to March 4, 1941.

It appears from the testimony of Isaac Betesh, president of the petitioning corporation, that the latter had been importing mats of the type in issue since 1939, ordering them through a representative in Japan by advising him of the sizes desired, after which he would buy the merchandise and ship it to the importer. The shipments prior to those here involved, the witness said, were invoiced, entered, and appraised at the prices actually paid. The shipments at bar were entered on the same basis through a customs broker, and it is the witness' oral testimony that the first information he had that the entered value was being questioned was contained in a letter to him from his customs broker under date of September 17, 1941, which is in evidence as exhibit 1.

The letter reads as follows:

M. J. CORBETT & Co., INC.

Customs Brokers and Forwarders

8–10 Bridge Street,

New York

Sept. 17, 1941.

European Linen Importing Corp.,
276 Fifth Avenue,
New York, N. Y.

Gentlemen:

As you know, the Appraiser has been conducting an investigation as to the value of Sagara Mats. That investigation has now been completed, including a number of reports from Japan.

We are now advised that the market value determined upon is as per memorandum attached, which includes all of the goods which you have imported covered by the following entries:

[Here follows a list of 14 entries, including the 6 involved in this proceeding]

Delivery was granted in each instance because of a Withheld Appraisement filed, but it will now be necessary to amend these entries to the Appraiser's figures, unless you are prepared to file an appeal for reappraisement. It is unnecessary to explain to you just what such an appeal would involve, but of course in any event we shall be guided by your instructions.

Yours very truly,
M. J. CORBETT & Co., INC..
By: C. G. RIOTTE, *Pres.*

From the letter it would appear that, despite the witness' testimony to the contrary, the petitioning corporation had been advised prior to September 17, 1941, of the fact that the values declared on entry had been questioned, for it will be noted that the first paragraph begins, "As you know, etc." Furthermore, the last paragraph recites the fact that "Delivery was granted in each instance because of a With-

held Appraisement filed" and in examining the official papers we find in each case a copy of a "Notice of Withheld Appraisement" on customs Form 6459, on which it is indicated that a copy was sent to the petitioner through its customs broker.

In the face of this, nothing was done by or on behalf of the petitioner to ascertain whether the entered values were correct until after receipt of the letter, exhibit 1. It is Mr. Betesh's testimony that he then consulted with a representative of his customs broker on the question of whether or not they should refuse to amend the entries and take appeals to reappraisement when the advances would be made. He then contacted other importers of similar merchandise, with no result.

The foregoing took place, apparently, in the latter part of September 1941. The merchandise was appraised on various dates between the 14th and 18th of January 1942. The reason given by the witness for the failure during the intervening period to make any effort to ascertain the correct values of the merchandise is based upon the deterioration of Japanese-American relations, which began to become manifest about that time, and one of the evidences of which was the suspension or uncertainty of the carriage of the mail between the two countries. In the witness' own words—

* * *. I was waiting so maybe Japan would be open and we could write and bring some kind of evidence and make a case or something, and then we can't write and everything is closed.

On behalf of the respondent, James V. Maher, a United States examiner of merchandise, who passed all of the merchandise in question, testified that in July 1941, he advised the petitioner's broker of the results of an investigation made abroad and gave him certain unit prices "which we wished him to amend," and that shortly afterwards he was visited by a representative of the petitioner, whom he could not identify, and with whom he discussed the correctness of the prices to which he, the examiner, indicated he would recommend the entered values be advanced. It is apparent that the unidentified representative of the petitioner was of the opinion at the close of such discussion that the advances would not be justified, but the examiner heard nothing further from him. About once a month thereafter Mr. Maher got in touch with the broker and asked what was intended to be done about the invoices, and was informed that the importer was "still making up his mind whether he would fight it or amend it."

Sometime in December 1941, the examiner was informed by the customs broker that the importer had decided to amend, but no amendments were forthcoming, and in January the advances were made.

Upon the foregoing record we do not think the petitioner has demonstrated that measure of good faith which would justify a find-

ing that entry of the merchandise at less value than that returned upon final appraisement was without intent to defraud the revenue of the United States, to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. We do not mean to be understood as holding that it was incumbent upon the petitioner to amend its entries upon the basis suggested by the examiner, but it was incumbent upon those in charge of its affairs, as prudent and reasonable business men, upon being advised that the entered values were being questioned, to make some effort to discover the correct values for the merchandise. True, after September 1941, it may well have been that there was no opportunity to obtain information from Japan, but we think the petitioner must be charged with the knowledge which was imparted to its agent, the customs broker, first, that appraisement was being withheld, and, second, as of July 1941, that investigation abroad had revealed the existence of values higher than the entered values.

It is argued in the brief filed on behalf of the petitioner that at the time entry was made neither the petitioner nor the appraiser had any information indicating values higher than the entered values, and that there were no facts or circumstances known to the petitioner when it made its entries which would cause a prudent or reasonable person in charge of its affairs to question the correctness of the entered values.

So far as the record indicates, it appears that the petitioner directed the customs broker to make entry of the mats in question at the invoiced values, relying upon the fact that in the case of previous entries approximately the same prices had not been advanced by the appraiser. It does not appear that at any time any of the officers or employees of the petitioner troubled themselves to ascertain whether those prices represented the value for duty purposes, although, it must be said, candidly, that there is nothing to show that necessity for such a course ever presented itself prior to entry.

While such a record of conduct, standing alone, might be sufficient upon which to base a finding favorable to the petitioner's prayer, yet, when coupled with the record of the petitioner's attitude after entry and before appraisement, when it must have known that the entered values were being questioned, we think the conclusion must be otherwise.

In the case of *United States* v. *Pennsylvania Salt Mfg. Co.*, 26 C. C. P. A. 232, C. A. D. 22, the court said:

It is, of course, true that the issue must be determined upon the question of intent at the time of entry, but, for the purpose of throwing light upon the matter of intent, the conduct of the petitioner in direct relation to the subject matter, before and subsequent to the entry, may be looked to.

See also *International Forwarding Co.* v. *United States*, 17 id. 86, T. D. 43377, and *C. Bruce Austin, Agt., Robert Reiner, Inc.* v. *United States*, 21 id. 211, T. D. 46731.

We are not unmindful of the fact that section 489, *supra*, which imposes additional duties for undervaluation, provides for their remission "upon the finding of the United States Customs Court * * * that the *entry* of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud, etc."

Those familiar with customs practice understand what is meant by the word "entry" in connection with the formal filing of certain papers and the deposit of duties or security, but we are here concerned with what it means in the sense of time. Is "entry" as used in section 489 limited to the time when those physical acts are first performed, or does it cover the period when control over the entered value is in the hands of the importer? The value declared upon the filing of the entry papers is not necessarily the "entered value," for by the provisions of section 487 amendment of the entry is permitted at any time before the invoice or the merchandise has come under the observation of the appraiser for the purpose of appraisement.

Section 489 begins with the following:

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, etc.

It cannot be denied that the entered value spoken of above is not necessarily the value declared at the time the entry papers are filed, but may be, and often is, the value shown upon amendment of the entry, i. e., the value shown before observation of the invoice or the merchandise by the appraiser. If, then, the imposition of additional duties is based upon the value shown by the entry at that time, how can it be said that the remission of such additional duties is governed, not by the conduct of the importer at that time, but at the time of the filing of the entry?

True, in the case at bar the importer did not amend his entered value, but he had that right, and in our view the requirement of good faith which is attendant upon the original entry of the merchandise must continue throughout the period during which he has control over the entered value, and if he later petitions for the remission of additional duties he must demonstrate that he conducted himself during that period in such manner as would warrant a finding by this court in his favor.

To hold otherwise would mean that an importer who originally entered in good faith but who later received information impeaching his entered values, but did nothing about it, would, nevertheless, be entitled to remission of additional duties imposed by reason of undervaluation on entry. This, we think, is contrary to the intention of the lawmakers in the enactment of section 489.

The facts of the case at bar are very similar to those in the case of *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. 356, C. A. D. 41. At page 359 the court summarized the situation in that case in the following words:

\* \* \*. The record discloses that the examiner gave notice in advance that he would have to advance the value of the merchandise and that the entered values were incorrect. Abundance of opportunity was offered to appellant so that it might communicate further with Japan or elsewhere, if necessary, in order to determine whether or not it had made a mistake in entering its merchandise. Instead of acting upon the advice given, appellant's representative, it seems, relied upon his belief that the examiner was wrong and sought to obtain evidence to sustain his view in an appeal for .reappraisement. He inquired from other importers as to the correct value and received no information as to value. As we look upon the matter this is not a circumstance which tends to support the conclusion that appellant had met its burden in proving to the trial court that its entries were made in good faith.

We think the salutary purposes behind the enactment of the provisions for the imposition of additional duties in section 489 would be poorly served if remission were granted in cases, such as that at bar, where the petitioner contented itself with a negative course of conduct after entry and before appraisement, although apprised of the fact that some question was being raised as to the correctness of its entered values.

The petition is therefore denied.

### DISSENTING OPINION

COLE, Judge: I respectfully differ with the court's opinion in this case. In doing so, I proceed on the premise that section 489 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1489), giving the importer a right to a remission of additional duties if he proves that the undervaluation was without intent to defraud the revenue, to conceal, misrepresent or deceive as to the facts or as to the value of imported merchandise, is a remedial statute to be liberally construed to promote the object of the legislation. *Klein, Messner Co.* v. *United States*, 13 Ct. Cust. Appls. 273, T. D. 41212. This same authority held that "if importer proves that he acted honestly and in entire good faith in fixing the value of his importation *on entry*, he is entitled to relief from the results of undervaluation." [Italics mine.]

I proceed upon the further premise that the conduct of a petitioner both before and subsequent to the entry may be looked to in determining the question of intent at the time of entry, the conduct after entry becoming important only in case it supports a finding of intent to defraud on entry.

The United States examiner, who testified on behalf of respondent, did not pass on all of the entries under consideration, but only those

made subsequent to November 1941, the ones previous having been acted upon by his predecessor. Except for this departure from the record, the rehearsal of the facts by the court is not only accurate but entirely fair to petitioner. It is with the inferences and conclusion drawn therefrom that I disagree. In applying it as a basis for the conclusion of the court, it seems clearly to support the directly opposite conclusion. Nothing stronger than the opinions cited by the court is needed as authority therefor.

After a lengthy review of the record, the court's opinion concludes: "While such a record of conduct, standing alone, might be sufficient upon which to base a finding favorable to the petitioner's prayer, yet, when coupled with the record of the petitioner's attitude after entry and before appraisement, when it must have known that the entered values were being questioned, we think the conclusion must be otherwise," citing in support thereof *United States* v. *Pennsylvania Salt Mfg. Co.*, 26 C. C. P. A. 232, C. A. D. 22. I can come to no other conclusion, in view of the foregoing statement, than that the court would have decided in favor of the petitioner if its conduct at the time of entry was the test, as I think it is, but declines to do so solely because of an apparent analogy between this case and the *Pennsylvania Salt Mfg. Co.* case, *supra*, although the court apparently concedes the record presents nothing whatever as a basis for criticism of its conduct at the time of entry. The cited case is totally different from the present case. There, the petitioner was the exclusive purchaser of the imported goods from the foreign manufacturer and the court very properly found from an investigation after entry that certain knowledge as to value was, and if not should have been, known to petitioner at the time of entry, and that petitioner was clearly guilty of an attempt to defraud the revenue of the Government. That set of facts in the *Pennsylvania Salt Mfg. Co.* case, *supra*, brought forth the finding that "the conduct of the petitioner in direct relation to the subject matter, before and subsequent to the entry, may be looked to," in order to determine the intent at the time of entry, because, as in that case, it brought out the otherwise unknown attitude of the importer at such time. In doing so, the appellate court very easily discovered facts revealing conditions existing at the time of entry which imputed knowledge to the petitioner quite sufficient to deny it any relief under the provisions of said section 489.

In the instant case, just the opposite exists. Not only does the record disclose a uniform practice, prior to the entries involved herein, of the appraiser's acceptance of this importer's invoice values, as well as of others handling similar merchandise—and there were many—but the subsequent investigation showed absolutely nothing to justify the slightest knowledge, either to the Government or to this or any other importer, at the time of entry, of any value different from that

shown on the invoices. This statement, I am sure, cannot be challenged.

Not only do I feel very strongly that the record in this case discloses good faith on the part of petitioner at the time of entry, but also that nothing subsequent thereto is disclosed to impute to the petitioner a knowledge of any facts or information, at the time of entry, which would brand it as attempting to defraud the revenue of the United States, or to conceal, misrepresent or deceive as to the proper value of the imported merchandise.

The court denies relief largely because of *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. 356, C. A. D. 41, on the theory that the petitioner, as stated in the court's opinion, "contented itself with a negative course of conduct after entry and before appraisement, although apprised of the fact that some question was being raised as to the correctness of its entered values." In arriving at this conclusion, the court evidently feels that petitioner's complaint as to its inability to obtain satisfactory information from Japan in 1941 is not important. I regard it as very important. The letter of September 17, 1940, *supra*, and upon which the court chiefly relies in support of its conclusion, contains this statement: "As you know, the appraiser has been conducting an investigation as to the value of Sagara mats. That investigation has now been completed, *including a number of reports from Japan*." [Italics mine.] Assuming the petitioner desired to check with Japanese interests—and such is an entirely reasonable assumption—the court should take judicial notice of conditions in Japan at that time—especially now, in view of what transpired within 3 months after the letter of September. 17—of the then existing attitude toward, or difficulties attending, any inquiry from the United States.

I find it easy to conclude that a relaxation of rigid requirements, such as might ordinarily apply, should be granted in this instance.

It should be noted that the Government's report of the investigation conducted in the foreign market was not received by the appraiser until July 1941, so that between the time of entry and the receipt of such report the customs officials were not in a position to accept or reject the invoice values at which petitioner entered the merchandise. So that between March 5, 1940, the date of the first entry involved, and July 1941, during which time the Government was conducting its investigation, there was absolutely nothing disclosed or divulged to the petitioner that would support a finding that he entertained the slightest thought or intention to defraud the Government, or that he acted differently than any reasonably prudent person, under similar circumstances, would have. Subsequent to July 1941, all will agree, it was difficult, if not impossible, to obtain any reliable information from Japan.

I sat with the court at the time testimony in this case was taken, and had an opportunity to observe the demeanor of the president of the petitioner corporation on the stand. His appearance and entire attitude and conduct at that time dispute any attempt to brand his action at the time of entry as fraudulent and deceitful.

I can come to no other conclusion than that the petition should be granted.